## Procopio *v.* Susquehanna Collieries Company, Appellant.

Argued March 4, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Henry A. Gordon*, with him *T. G. Wadzinski*, for appellant.

*Roger J. Dever*, for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

This appeal is by the employer from a judgment entered upon an award of compensation. It is not controverted that from the date of the happening of the occurrence, hereinafter described, the claimant has been totally disabled by an inflammation of his vertebral column, technically described as spondylitis. The referee found as a fact that the spondylitis was "either caused or aggravated" by an accidental injury suffered by the claimant in the course of his employment. Compare Zionek v. Glen Alden Coal Co., 105 Pa. Superior Ct. 189, 160 A. 154. This finding was affirmed by the board and the court below dismissed the employer's appeal and entered judgment upon the award. The contention of the learned counsel for the appellant is, in the language of their brief, "that there is no competent evidence in the case supporting the finding."

Claimant is about fifty years of age and was employed by appellant as a miner. On October 3, 1933, he was engaged in loading mine cars and his description of the mishap upon which he bases his claim for compensation reads: "While shoveling coal in the

'buggy,' there was a big lump of coal got on the shovel and when I tried to put it into the buggy I slipped and the lump fell on the ground, the lump fell down and I wrenched my back." This was not the first back injury suffered by claimant. He testified that in 1924 a piece of rock fell on his back disabling him for several months and that in August, 1931, he sprained his back while working in one of appellant's collieries. For this injury he was paid compensation for "a short time" but returned to work "when the collieries started," and, although experiencing trouble with his back under certain weather conditions, continued at his employment up to the date of his last injury. Immediately after his injury on October 3d, he was taken in an ambulance to the office of appellant's doctor and thence to his home. Later, he was a patient for short periods in Jefferson Hospital, Philadelphia, and Geisinger Memorial Hospital at Danville. In addition to thus showing that although he had suffered previous injuries to his back he was able to follow his usual employment with ordinary regularity up to the time of the last injury, claimant called Dr. V. J. Baluta, as his medical expert. In direct examination Dr. Baluta positively expressed his professional opinion that the accident of October 3d was "a marked contributory factor in [claimant's] present disability." His cross examination reads: "Q. Can you tell us which lumbar vertebrae are affected with this spondylitis? A. No, sir, I couldn't definitely. I couldn't place it on one or two of them. It seems to be in the whole lumbar region. Q. What vertebrae would they be? A. Down in the lower lumbar region. Q. Give us the vertebrae by number? A. Well, say the fourth and fifth. Q. The fourth and fifth lumbar vertebrae? A. Yes. Q. How do you determine it was spondylitis, Doctor? A. By the symptoms that the man presented. Q. What symptoms did he present that definitely determined to you that he

had spondylitis? A. Pain, and inability to bear any weight any length of time in a standing position, and there is quite a bit of difficulty in arising. Q. You trace that spondylitis to the injury of October 3, 1933? A. That is a difficult thing to do because nobody seems to know what the condition of the back was up until the time of the present injury. Q. Did the injury aggravate that condition? A. It is my opinion that it did. Q. If you don't know what the condition of the back was before the injury of October 3, 1933, how can you testify that it was aggravated by that injury? A. From the history of the case. The man said that he worked every day after his discharge from the hospital in 1924, he worked every day up until this accident, and from that time on he has not worked a day. Q. To what extent did that injury aggravate that prior condition, Doctor? A. To the extent that the man is unable to return to work. Q. That is the nature of it. I want to know to what extent that condition, that spondylitis, was aggravated by the injury of October 3, 1933? A. That, I can't answer because I don't know the condition before. Q. Now, Doctor Baluta, if you don't know anything about this man's condition before October 3, 1933, how can you testify it was aggravated by that accident? A. From the history of the case. Q. And that is all, is it? A. Yes, sir. Q. From what this man told you? A. From what he told me and the symptoms presented."

Claimant was not able to show by X-ray photographs or from previous medical examinations what the exact condition of his spine was immediately prior to the accident of October 3d, but the evidence does establish that, although his back had been injured some nine years before that time and again in 1931, he had a spine with which he could regularly engage in his usual work and that since he slipped and wrenched his back, as described in his testimony, he has been unable to do any work. If he has, in fact, been disabled since that

event, any fact-finding tribunal would be justified in concluding that he then suffered some "personal injury" which brought about a radical change in his physical condition.

In support of its contention that claimant's disability is due to the normal progress of the diseases from which he suffered, appellant called Dr. C. E. Ervin, who testified: "Q. Now proceed, Doctor, and tell us what you learned about this man and discovered about his condition. A. Well, he gave a history that back in 1924 he had a back injury, and he has complained of pain off and on from that time, as he has already testified to here today. He gave me a story of straining his back on October 3, 1933, while shoveling lumps of coal. He complained that since that time he had been unable to do anything. Now the examination shows him to be a rather short, stocky individual, well nourished. He gets around very poorly and seems to have considerable pain in his back, and when one comes to examine his spine there is considerable limitation of motion. It was noted that at times, however, he would complain at one place, at one point of the back, and then again he would not complain of pain at that same place. In stooping over to pick up an object from the floor he seemed to have a great deal of discomfort in his back. Now, there is considerable deformity from the waist down, due to this Von Recklinghouser's Disease, or multiple neurofibromata. He has, perhaps, a dozen of these lumps appearing in size from half an inch to the size of half the size of a hen's egg, and these lumps are somewhat tender. X-ray of his spine, according to Dr. Hall, shows a spondylitis in a number of the lumbar and dorsal vertebrae, a little more marked between the seventh, eighth, ninth, tenth, eleventh and twelfth dorsal vertebrae. His blood Wasserman was negative. His urine was negative. Q. Doctor, was there found there any evidence of the old scar on his back in the lumbar

region anywhere? A. Yes. Q. Where was it found to be? A. An old scar in the lumbar region apparently over the fourth and fifth lumbar vertebrae. That included about two vertebrae. He complained of a great deal of pain over that area when pressure was applied. He also complained of pain over the lateral groups of muscles when pressure was applied. Q. Now, you say you made two diagnoses? A. Yes. Q. What was the first one? A. The first was chronic arthritis of the thoracic and lumbar spine. And the second was Von Recklinghouser's Disease, or multiple neurofibromata. . . . . . . (By the referee) Q. Is he totally disabled, Doctor? A. Yes, I think practically so, because he has a great deal of discomfort when he gets around." This witness also stated he was satisfied there was no connection between the physical conditions he found upon his examination and the sprain upon which claimant relied.

The case is similar to that of Reffner v. Consolidation Coal Co., 121 Pa. Superior Ct. 11, 182 A. 762. In that case a miner had his back severely injured in 1926 but recovered sufficiently to return to his regular employment and continue therein until April 10, 1933, when in reaching down to pick up a mine prop he experienced a "sudden twist" which disabled him from that time forward. The only difference between the cases is that in the Reffner case there was evidence in the form of X-ray pictures which showed the condition of claimant's back in 1928, and the medical testimony with relation to conditions before and after the accident, was, therefore, more definite than in the present case. In affirming the judgment in that case we reviewed the authorities and need not repeat what was there said.

We do not consider the difference noted in the medical testimony material. The important question here is: What was the claimant required to show by expert

medical testimony in order to fasten liability for payment of compensation upon appellant?

Compensation is payable for *disability* resulting immediately and directly from "violence to the physical structure of the body" and also for disability due to such diseases and infections as naturally result therefrom. The fact that an employee has a chronic physical condition or disease which renders him more susceptible to the injury sustained than an ordinary person would have been does not defeat his right to compensation.

This is not a case in which it is contended that the disability is due to the development of a disease which resulted from the accident and in which a claimant would be required to show by expert testimony that the disabling disease was most probably, and not merely possibly, attributable to the accident. Hence, we need not consider such cases as Luckenbill v. P. & R. C. & I. Co., 93 Pa., Superior Ct. 438, cited and relied upon for appellant, in which the employee was paid compensation for a number of months under an agreement, signed a final receipt and returned to work, and subsequently sought a *reinstatement* upon the ground that there was a causal connection between the accident and the partial disability from which he was then suffering. We there affirmed a judgment for the employer upon the ground that the medical testimony in that case amounted to no more than the expression of an opinion that the then existing disability "might have or could have resulted from the cause alleged." Compare upon question of necessity for and character of medical testimony Davis v. Davis, 80 Pa. Superior Ct. 343.

But here we have a case in which an employee while actively engaged in his regular work (and after having loaded ten cars) slipped with a large lump of coal on his shovel and "wrenched" his back. It was deemed necessary to remove him to his home in an ambulance. His claim was that from the moment he slipped and

sprained his back he has been unable to do any work. In other words, he says he is entitled to compensation because he accidentally suffered such violence to the physical structure of his body that he was instantly and totally disabled. Granted that his unsupported statement that he was disabled might not be considered sufficient under the circumstances here present, we think the extent of his burden was to show by competent medical testimony the physical cause or causes of his disability and whether it was total or partial. Both Dr. Baluta and Dr. Ervin stated positively that claimant is totally disabled from any kind of work by the physical conditions they found in his spine.

With this uncontroverted medical explanation of the reasons claimant is unable to engage in any employment before them, we think the compensation authorities were justified in concluding that the accident of October 3, 1933, so aggravated an existing condition of his vertebral column as to cause immediate total disability, and in rejecting the opinion of Dr. Ervin that his disability is due to the normal progress of the disease with which he was afflicted at the time of the accident. Upon consideration of the entire record we are convinced that the court below did not err in entering judgment upon the award.

Judgment affirmed.