# KATHRYN JACOBS v. VILLAGE OF BUHL.[1]

April 30, 1937.

No. 31,145.

*L. R. Simons* and *Philip M. Stone,* for relator.
*Austin & Wangensteen,* for respondent.

[1] Reported in 273 N. W. 245.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission granting compensation to dependents of deceased employe.

The facts necessary to an understanding of the issues raised by this review are substantially as follows:

Petitioner's husband, Wesley S. Jacobs, a resident of Buhl, this state, died on May 1, 1935. At the time of his death and for about 15 years prior thereto Jacobs was a police officer of the village of Buhl. On the evening of March 5, 1935, he left his home about seven o'clock for the police station. He arrived there about eight o'clock p. m. An officer named Bullis was on duty at the time. Bullis testified that on his arrival Jacobs told him that "he had a fall that evening up at the library." We quote from his testimony:

Q. "Did Mr. Jacobs say on what he had fallen at the library?

A. "On the walk. He said he fell in front of the library."

Nothing further was said by Jacobs at that time as to whether he sustained an injury. The following morning he complained to his wife about an injury to his left leg, and upon examination she discovered that there was a black and blue bruise on the leg above the knee. Jacobs continued to work from March 5 until March 15. After that he was off duty until April 1. It is not claimed that he was off duty because of any disability sustained by the injury, but because of the part-time arrangement under which he worked. Jacobs then worked from April 1 until April 15. It appears that the leg continued to bother him between the date of the injury and April 26, 1935, when he consulted Dr. Sarff. He was taken to Eveleth shortly afterward, where he entered the More Hospital and where he remained until his death on May 1, 1935.

It is conceded that deceased had been afflicted with diabetes for about five years prior to the accident. In 1930 he was confined in the hospital for about four months. After recovering he returned to work and continued to work steadily until April 15, 1935, except for the time off duty because of part-time employment. It was necessary for him in the meantime to take small quantities of insulin to regulate his condition. His diabetic condition predisposed

him to infection which was susceptible to aggravation by injury. After death an autopsy was performed at St. Mary's Hospital. It was performed by Dr. George L. Berdez, a prominent pathologist connected with that hospital. He testified that the cause of death was coronary sclerosis and a septicemic condition following an osteomyelitis of the left femur. He analyzed the case in the following language:

"I think because he was diabetic he has had meanwhile several lesser infections, furuncles, for example, and that he had some microörganisms circulating in the blood, otherwise he wouldn't have had osteomyelitis at any time; that if he had an accident with a traumatism to the left knee causing a bruise, this might very well cause a localization at that particular place of the microörganisms circulating in the blood; that this localization would eventually in time lead to a large abscess and a septicemic condition; that a septicemic condition in itself may cause the death of a patient, but in this case the patient had a very bad heart, and that the heart as it was together with the other strain caused by the osteomyelitis and the septicemic condition are the cause of death."

Other competent physicians agreed with Dr. Berdez. All of the medical witnesses for petitioner agreed that the medical cause of death was septicemia which fatally affected the heart and heart muscles and was caused by osteomyelitis in the left leg above the knee and resulted from an accidental injury.

"The autopsy showed, as I say, that Mr. Jacobs had coronary sclerosis. In my opinion, this overwhelming infection of the femur which involved the left knee joint produced the symptoms which unquestionably were toxemia. In other words, Mr. Jacobs had, some few days previous to his death, a generalized infection of the blood. This in turn and because of the toxicity embarrassed the heart muscle further through a toxic myocardium; in other words, the heart muscle itself revealed evidences of a recent infection. As was shown at autopsy, the liver and spleen in turn were also infected in the same manner. I feel that the acute overwhelming

infection of the bone aggravated this coronary sclerosis, which hastened his death because of this infection or toxemia. Further, I believe that the reason for his anoxemia, or lack of oxygen, you might say, to the heart muscle itself, was hastened and aggravated by the same infection, as we know that any overwhelming toxemia does decrease the amount of oxygen in the blood, the oxygen carried in the blood, and tends to cut down the oxygen supply to all parts of the body, of course, as well as the heart. In this case the important thing is that the heart was primarily affected by the anoxemia. I believe the condition was certainly hastened, no one can say how many years or anything about it, no way of ascertaining that, but I believe his death was caused indirectly or directly due to the anoxemia, which in turn was caused by an overwhelming infection and toxemia."

The relator, by appropriate assignments of error, raises two important questions:

(1) It asserts that there was no competent evidence to support the finding that the deceased sustained an accident on March 5, 1935, which resulted in his death.

(2) It claims that the evidence does not justify the finding of the industrial commission that the injuries sustained by the deceased employe contributed to his death as one of the proximate causes thereof.

■ The question raised by the relator which we will first consider is whether or not it was proper to admit, as part of the *res gestae,* the statements of the injured employe, made to the witness Bullis on the evening of March 5, 1935, to the effect that he had fallen that evening on the walk in front of the library. The majority of the commission held that such testimony was competent. We have been much aided in considering this question by the very able majority and dissenting opinions of the industrial commission.

Our decisions tend to support the conclusions reached by the majority of the commission. State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806; Roach v. G. N. Ry. Co. 133 Minn. 257,

158 N. W. 232; Clark v. Davis, 153 Minn. 143, 190 N. W. 45; Perkins v. G. N. Ry. Co. 159 Minn. 492, 199 N. W. 891; State v. Gandel, 173 Minn. 305, 217 N. W. 120; Johnston v. W..S. Nott Co. 183 Minn. 309, 236 N. W. 466; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3.

In Texas Employers Ins. Assn. v. Shifflette (Tex. Civ. App.) 91 S. W. (2d) 787, 790, the court discussed the modern tendency to liberalize the admission of testimony under the *res gestae* rule, in the following language:

"The modern tendency of cases is to extend the res gestae doctrine in the admission of evidence beyond its one-time narrow limits. Evans v. McKay (Tex. Civ. App.) 212 S. W. 680, 688; 10 R. C. L. 974. This tendency to broaden and enlarge the scope of the rule of res gestae is but the giving of concrete application to another modern announcement of the law of evidence that, 'The question is not now how little, but how much, logically competent proof is admissible.' 10 R. C. L. p. 976, § 158."

In a workmen's compensation case, Thompson v. Conemaugh Iron Works, 114 Pa. Super. 247, 254, 175 A. 45, 48, the Pennsylvania superior court recently said:

"As stated in Smith v. Welsh Bros. et al., 102 Pa. Super. 54, 57, 59, 156 A. 598, 599: 'In deciding what declarations are admissible under this doctrine, no fixed time or distance from the happening of the litigated act can be established as a standard to determine what shall be part of the res gestae. Each case must stand on its own facts. Com. v. Werntz, 161 Pa. 591, 29 A. 272; Com. v. Stallone, 281 Pa. 41, 126 A. 56; Com. v. Gardner, 282 Pa. 458, 128 A. 87. * * * In this class of cases the rules of evidence are not applied with the same rigor as in litigation before a jury. A strict technical application of these rules would often defeat the chief purpose of the Workmen's Compensation Act [77 PS § 1, et seq.], which is intended to give compensation to employees injured by accidents in the course of their employment. Johnston v. Payne-Yost Const. Co. [292 Pa. 509, 141 A. 481], supra.'"

In the larger cities of this state there are many policemen walking their beats alone, day and night. In every small city and hamlet there is a policeman working alone at night. Night watchmen work alone. Other employes work alone. These employes are subject to numerous possibilities of accidents which may cause conditions that may bring about their death. They do not have a witness with them to furnish proof as to the happening of an accident if the injuries they receive close their lips in death. The number of compensation cases which reach the courts of last resort where the only proof of the accident is the declaration of the injured employe give weighty proof of the truth of the declaration of the Pennsylvania court that to give a strict application of the *res gestae* rule in compensation cases would defeat the intent of the workmen's compensation law. The purpose of that law is to make each industry take the burden of caring for the casualties caused in its operations. We cannot limit this purpose to cases in which employes who have died from injuries sustained in the line of duty can produce an eyewitness to their accidental injuries. This would defeat both the letter and spirit of the compensation law.

The time element is sometimes considered in determining whether declarations are *res gestae* or narrative, but it is not considered controlling. In O'Connor v. C. M. & St. P. Ry. Co. 27 Minn. 166, 173, 6 N. W. 481, 484, 38 Am. R. 288, this court said:

"It is evident that whether the declaration is directly connected with, and growing out of, the main fact, does not depend on the time which has elapsed between them, though it must always be an important element in the consideration of the question; a considerable time may elapse, and yet the declaration be a part of the *res gestae.*"

It may be noted in passing that the time element in Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 A. S. R. 332, was 25 minutes; in Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232, the period was 45 minutes; and in Clark v. Davis, 153 Minn. 143, 190 N. W. 45, the period was one hour.

In Conoway v. State, 171 Ga. 782, 785, 156 S. E. 664, 666; *Id.*, 49 Ga. App. 371, 175 S. E. 391, a criminal case, the supreme court of Georgia said:

"The proximity of the statement to the alleged criminal transaction is not to be determined by mere time, but by such coherence and connection between the alleged transaction and the statement as will tend to show that in making the statement the party making it is stating truthfully, without guile, actual facts."

The test should not be the appearance of the injured person at the time of the declarations, because different persons react differently to pain, suffering, and excitement. In fact, in cases in this court where the *res gestae* statements considered were made by others than the injured plaintiff the persons making them were under no mental excitement except that incident to explaining the cause of the accident. Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 A. S. R. 332, involved a declaration of an engineer at a mine 25 minutes after an accident that he got scared and turned the brake the wrong way. Aho v. Adriatic Min. Co. 117 Minn. 504, 136 N. W. 310, involved a declaration made 20 minutes after an accident and after the injured plaintiff had been removed from the scene of the accident. One of the assistants asked the engineer why he lowered the skip. In response the engineer said he had been signaled to do so. Mitton v. Cargill Elev. Co. 129 Minn. 449, 152 N. W. 753, involved a statement made by defendant's employe 10 to 20 minutes after the accident that he had told plaintiff to shut off the engine. This declaration was made after plaintiff had been extricated from the engine, carried upstairs, and placed in a chair. The declarations in the cases just considered would have been inadmissible as hearsay but for the application of the *res gestae* rule. They related to matters which had happened some minutes preceding and were to some extent narrative of a past transaction. The persons who made them had not been injured and were not suffering.

In State v. Horan, 32 Minn. 394, 20 N. W. 905, 906, 50 Am. R. 583, defendants were appellants in a conviction on a robbery charge.

The complaining witness following the robbery went to the house of a neighbor, who notified the police by telephone. He then returned to the place of the robbery, where he found his hat and cane. He then went to his own house, and in a few minutes a policeman came, to whom he gave a description of the men who had robbed him. On the trial the evidence of the description given by complaining witness to the policeman at his house was received. The court held that such evidence was properly received under the *res gestae* rule. This court said [32 Minn. 397]:

"It might be considered that when the declarant thus described the men who had assaulted him, whom it appeared he had never before seen, his mind was still so occupied and absorbed with his exciting and hazardous experience as to maintain for so brief a period a close and natural connection between the event and his statements to the officer, and that hence such statements would be the direct and natural outgrowth of the robbery and its concomitants, and they would derive a special credit from that fact, (though they would otherwise be hearsay,) and would also be relieved from the suspicion of device or afterthought."

If the word "injury" is substituted for the word "robbery" in the foregoing quotation we have the case we are now considering.

In Mutual L. Ins. Co. v. Treadwell, 79 F. (2d) 487, the circuit court of appeals of the fifth circuit held:

"In an action on insurance policy for disability alleged to have occurred when insured was shot by highwaymen, testimony of three witnesses tending to show statement made by insured soon after injury to effect that he was held up by two masked men and shot *held* admissible as part of res gestae."

This is an application in a civil action of the rule applied by this court in the Horan case, a criminal case. It will be noted that in both the Horan case and the Treadwell case declarant was alive at the time of the trial.

A consideration not to be disregarded in passing upon this case is the fact that there was an entire lack of motive for the deceased

to misrepresent at the time he told of having received the injuries. His injuries did not appear at that time to be serious. Death from his injuries was probably the last thing he was thinking about. It is doubtful if at that time he had the least thought in his mind that his injuries would even require an application for compensation. A very similar situation was considered by the Louisiana court of appeals in Butler v. Washington-Youree Hotel Co. Inc. (La. App.) 160 So. 825, 826. The deceased employe in that case was suffering with diabetes. He worked alone as an assistant engineer from one a. m. until seven a. m. When his helper quit at one a. m. nothing had happened to Butler. At seven a. m. Butler ceased his work and proceeded to his home, some 16 blocks away. When he arrived home he was walking with a limp and was immediately asked by his wife the cause of his limping. The landlady with whom they were living was present at the time. Butler replied that he had struck his knee or leg against a pump in the engine room at the hotel. Butler died of septicemia in a sanitarium to which he was sent when a serious condition developed on his injured leg some days after the accident. In the opinion the court said [160 So. 826]:

"The accident and resulting injury appeared to be of a trivial nature, and, if such an accident had happened to a healthy person, the chances are it would have been trivial. Butler undoubtedly considered it of no consequence, and, if there had been any one available between the hours of 1 a. m. and 7 a. m. to whom to report the accident, it is very doubtful that he would have done so. However, on arriving home immediately after his hours of work were done, it was perfectly natural for him to explain to his wife why he was limping, and ask for and receive some treatment. The question of whether the explanation made to his wife and landlady was spontaneous or related with forethought and design, is the question to be considered as a basis for the admissibility of the evidence. The evidence showing the conduct of deceased after the accident makes it certain to our minds that the explanation made by him to his wife and landlady was spontaneous, and without forethought and

design. At that time deceased had no idea of claiming compensation for what he thought was a trivial injury. He continued at his regular work, made no report to his superiors, and did not visit the doctor's office, which was in the hotel and available at any time. It was ten days after the accident when his knee and leg had grown worse and had become unbearable, before he called on defendant's doctor, or any other doctor. Butler's conduct is not consistent with the idea or contention that he expected to claim compensation.

"No one knows exactly what time the accident occurred. It was between 1 a. m. and 7 a. m. It may have happened at 2 a. m. or at 6 a. m.; however, time alone is not the only element to be considered in determining whether or not the statement of deceased was a part of the res gestae. Several days after the accident, deceased made the same statement he had made to his wife to three or four other reputable persons, who testified to that fact over the objection of defendants. These last-mentioned witnesses were not allowed to testify under the res gestae rule, but in corroboration of deceased's wife and landlady, to show they were telling the truth when testifying as to the explanation of the injury given to them by deceased. There was no error in this ruling, and we are of the opinion that the statement and explanation made by deceased to his wife and landlady immediately upon arriving at his home were admissible under the res gestae ruling."

The declaration held admissible as part of the *res gestae* in Thompson v. Conemaugh Iron Works, 114 Pa. Super. 247, 175 A. 45, was made some time after the accident by a workman who was suffering from diabetes and received a somewhat trivial injury which later developed into a serious condition which caused his death. In that case the statements made by deceased were wholly narrative but made at a time when he had no apparent motive for fabrication.

It is natural that an injured person would be occupied and absorbed by the experience of his recent injury and that he would make a statement relative thereto to the first fellow employes that he happened to meet. Such a declaration would, in the ordinary

run of life, be accepted as a true statement of what occurred. We should not set up technical rules to exclude as evidence what would be accepted as true in the ordinary run of life. Speaking of the *res gestae* rule, Mr. Justice Swayne of the United States Supreme Court said in Travelers Ins. Co. v. Mosley, 8 Wall. 397, 408, 19 L. ed. 437:

"The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority. We think it was properly applied in the court below.

"In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. Their probative force would not be questioned."

In Preferred Accident Ins. Co. v. Combs, 76 F. (2d) 775, 778, the circuit court of appeals of the eighth circuit, Judge Joyce, writing the opinion for the court, quoted with approval the following statement from the opinion in Chesapeake & O. Ry. Co. v. Mears (C. C. A.) 64 F. (2d) 291, 293:

"While a logical basis is not always given for the decisions, the cases almost uniformly hold that a statement made by an injured person as to the cause of his injury is admissible if the time which has elapsed since the injury is so short that he is still under the influence of the happening and his statement presumptively a spontaneous expression growing out of it and not the result of reason and reflection."

In 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 3222, the following statements taken from our decisions appear:

"A question of evidence, to some extent, is a question of sound policy in the administration of the law. Sometimes it is necessary to weigh the probative force of evidence offered, compare it with the practical inconvenience of enforcing a rule to admit it, and de-

cide whether, as a matter of good policy, it should be admitted. Rules of evidence should be practical and subject to modification as conditions change."

Perhaps a liberal interpretation of the rule of *res gestae* may in a few cases result in giving compensation to dependents not legally entitled thereto, but a technical and strict administration of the rule would defeat many meritorious cases and transfer numerous dependents from industry, upon which the compensation law intends to put the burden, to public charity. We sustain a liberal interpretation of the *res gestae* rule.

■ Even if the *res gestae* evidence was not competent in this case, the court is of the opinion that there was ample other competent evidence to support the finding that an accident occurred to decedent on the evening of March 5, 1935. Regardless of the fact that decedent was afflicted with diabetes, he was apparently in such condition of health prior to that date that he had no difficulty in pursuing his ordinary duties. On the morning of March 6 his wife observed a black and blue spot on his left leg above the knee. It could be inferred that complaints by deceased called her attention to the condition and caused her to observe it. The discoloration thereafter remained on the leg. Deceased had difficulty in sleeping, and it was necessary for him to put a pillow under the leg so that he could rest. It appeared to bother him when he walked. This condition continued up to the time he consulted a physician about April 26, and thereafter until the time of his death. This evidence, coupled with the medical testimony hereinafter referred to, was sufficient, in our judgment, to base a finding of accident at the time in question.

Absolute proof of an accident is not essential. It may be proved by circumstantial evidence. The rule is stated in 1 Schneider, Workmen's Compensation Law (2 ed.) p. 670, § 233, as follows:

" 'It is not necessary that some witness should testify to seeing an accident arising out of and in the course of employment, if it is shown in some way that while the employee is at work there has been a recent accident or some circumstances tending to show the

fact.' Peoria Cordage Co. v. Industrial Board of Illinois, 284 Ill. 90, 119 N. E. 996, L. R. A. 1918E, 822. 'The employee is not required to prove the exact cause of his injury. It must happen in the course of his employment and it must arise out of it. These facts must not be left to mere surmise and conjecture; but it is not essential that he should prove the precise cause which produced the injury.' Bean's Case, 227 Mass. 558, 116 N. E. 826."

Also, in Bracken v. Bethlehem Steel Co. 115 Pa. Super. 251, 255, 175 A. 643, 644, as follows:

"The circumstances independent of the hearsay testimony from which the referee could have found that decedent had received an injury in the course of his employment are as follows: Decedent's usual good health on the morning that he entered defendant's plant; his complaint of pain in the back a short time after he left the plant and his inability to walk to his home from the street car; that he arrived home physically ill and that an examination of his back by his wife, son, and sister-in-law showed the existence of a large lump on his back; the subsequent development of the cellulitis in the definite region of the lump; the virulent form of the infection which according to medical testimony comes where there is a break of the covering of the skin; and that cellulitis can be caused by a blow and the decedent had no organic trouble except the cellulitis. These circumstances were sufficient from which the referee could have found that the decedent suffered an injury while in the course of his employment, as the result of which death followed."

Also by this court in the recent case of Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3, 4. We quote from the discussion in that case.

"On July 3, 1931, Anderson sustained an injury to the middle finger of his right hand. Some of the evidence tending to prove that the injury was received in the course of his employment was perhaps hearsay. Evidence was admitted over the objection of relators that Anderson told the foreman that he had cut his finger on a

bottle and that a doctor had put the bandage on for him. It may be that this evidence was admissible under the *res gestae* rule. Similar statements as to how and where he sustained the injury were made by Anderson to physicians who cared for him. There was, however, sufficient competent evidence justifying the commission's finding. That is all that is necessary. [Citing authorities.] On the day above mentioned Anderson started to work at nine a. m. The foreman testified that he saw him during the forenoon; that he was close to him and at that time there was no bandage on his finger; that when he again saw him at about six o'clock that afternoon there was then a bandage thereon; that it was a clean one and had the appearance of having been put on by a doctor. This man further testified that he did not, as was his ordinary duty, report Anderson to the office because he saw he had already been to a doctor. In his testimony he further stated that he knew that Anderson had had an accident. Under the situation thus presented, the commission might well infer that an injury was received by Anderson in the course of his employment. *It was not necessary that there be an eyewitness to the accident.*" (Citing cases.)

■ The other question presented has to do with whether the evidence is sufficient to sustain the finding that the injury was the cause of death. This court has held that the proof required to sustain the relation of cause and effect between an accidental injury and the subsequent death of the injured person must be such as to take the case out of the realm of conjecture; but if the evidence furnishes a reasonable basis for an inference that the injury is the cause of what followed that is sufficient. Healy v. Hoy, 115 Minn. 321, 132 N. W. 208; Hogan v. Twin City Amusement Trust Estate, 155 Minn. 199, 193 N. W. 122.

All the witnesses agreed that deceased was suffering from diabetes. The commission found that he sustained an accidental injury. All the witnesses agreed that slight injuries to persons suffering from diabetes quite often prove fatal. The deceased worked steadily before the accident. The sequence of events from the accident to his death was unbroken. To the lay mind, the existence

of diabetes, the accidental injury, the sudden going downhill, and the ultimate death can point only to the conclusion that this accident to this man in his condition hastened his death. In Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635, 636, this court discussed the applicable rule and said:

"An actual aggravation of an existing infirmity caused by accident in the course of employment is compensable, even though the accident would have caused no injury to a normal person."

Some recent decisions of other courts are helpful. In Lee v. Lone Star Cement Co. 142 Kan. 349, 46 P. (2d) 864 [syllabus par. 2], the court held:

"Although workman is afflicted with disease which eventually culminates in his death, his dependents are not barred from right to compensation if he actually suffered accident arising out of and in course of his employment, and if such accident intensified or aggravated his affliction or contributed to his death."

In Smith v. Department of Labor and Industries, 179 Wash. 501, 38 P. (2d) 212 [syllabus par. 1], the court held:

"Death caused by strain arising out of employe's ordinary work *held* compensable as resulting from 'accident arising out of and in course of employment,' notwithstanding that strain was fatal because employe was suffering from chronic heart disease, and that employe might have died although doing nothing."

In United States F. & G. Co. v. Industrial Comm. 96 Colo. 571, 45 P. (2d) 895 [syllabus par. 12], the court held:

"Death of night watchman who was suffering from advanced atherosclerosis of both coronary arteries and from chronic fibrous myocarditis as result of watchman's overexertion in scuffle with janitor who created disturbance in building *held* compensable as due to 'accident' which 'arose out of and in course of employment.' "

See also Procopio v. Collieries Co. 122 Pa. Super. 514, 186 A. 283; Thompson v. Conemaugh Iron Works, 114 Pa. Super. 247, 175 A.

45; Hogan v. Twin City Amusement Trust Estate, 155 Minn. 199, 193 N. W. 122; Lafferty v. Carbo-Oxygen Co. 122 Pa. Super. 425, 185 A. 883; American Rolling Mill Co. v. Duncan, 53 Ohio App. 33, 4 N. E. (2d) 148; Witt v. Witt's Food Market, 122 Pa. Super. 557, 186 A. 275. We agree with the statement of the Iowa supreme court in State v. Smith, 73 Iowa, 32, 41, 34 N. W. 597, 601: "Life at best is but of short duration, and one who causes death ought not to be excused for his act because his victim was soon to die-from other causes."

Having in mind those well settled rules of law, it must follow in a case like the one before us that when an injury occurs to an employe suffering from a disease which renders the employe more susceptible to serious consequences from injury, and where death follows in close sequence without the proof developing any other active exciting cause for the sudden onset of the serious conditions, the fact-finding body should find that the injury caused his death.

In this case the fact-finding body so found, and we affirm the finding. There have been several recent decisions of the courts of last resort involving situations almost identical with that involved in this case in which the issue was whether the death of a person suffering from diabetes was caused by an apparently trivial accident and in which the evidence was held to sustain a finding entitling dependents to compensation. Butler v. Washington-Youree Hotel Co. Inc. (La. App.) 160 So. 825; Thompson v. Conemaugh Iron Works, 114 Pa. Super. 247, 175 A. 45; Newell v. Thatcher Mfg. Co. 248 App. Div. 838, 290 N. Y. S. 163.

The respondent is allowed $100 as attorneys' fees incident to the proceeding in this court, which will be included in the judgment for and in addition to the usual costs and disbursements taxed herein.

Order affirmed.