## Commonwealth v. Sabella, Jr.

*Blair V. Pawlowski*, for Commonwealth.

*Francis I. Leahey*, for defendant.

McDONALD, J., May 10, 1968. — This matter is before the court on defendant's motion for new trial. He was charged with fornication and bastardy and, upon trial by jury, was found guilty. There was suffi-

cient credible evidence of the act of intercourse, conception and birth of a child to support the verdict. The defenses offered were a denial of intercourse, alibi and sterility.

Defendant contends the court erred by striking testimony of Dr. William Ayres, a pathologist, who, as an expert medical witness testified to an impairment of defendant's fertility.

Dr. Ayres testified he had made an examination of defendant on December 8, 1967; the intercourse occurred July 10, 1966. He determined there were no diseases or abnormalities of the private parts. A specimen of semen was ejaculated and tested. The quantity of semen was 1cc, which is low; appearance normal, and the number of sperm was 23,000,000; motility of the sperm was good. To relate his opinion to the period of nearly one and one-half years before when the intercourse occurred, he considered a seminal examination made by Dr. Howard Schaub during January 1967, which confirmed the reduced number. Dr. Schaub's report was admitted for Dr. Ayres' consideration by agreement of the Commonwealth.

The doctor also testified that he had assumed as a factual basis for his opinion that defendant had not had intercourse or masturbated recently before the extraction of semen. According to him, these acts would reduce the sperm count and impair fertility. There was no testimony before the jury to support the assumption of this fact, although defendant had told the doctor at the time of his examination the acts had not occurred.

The relevant portions of the testimony follow:

"BY MR. LEAHEY:

"Q. Now, Doctor, I'll repeat my question again so the jury understands it, after all the intervening things that have happened. Is it possible for you, with reasonable, medical certainty, to render an opinion

as to Carmen Sabella's degree of fertility or infertility, in other words, his capability of becoming a father July 10, 1966?

"A. Yes.

"Q. Alright, now, what is your opinion? What is your opinion as to Carmen Sabella's degree of fertility or infertility on July 10, 1966?

"A. I believe that his fertility was impaired.

"Q. You say, 'impaired,' Doctor; to what degree would you feel his fertility was impaired?

"A. I don't believe I can state the degree. I think that would be speculation on my part".

"Q. Do you have an opinion as to any number of sperm below which a man would be infertile or relatively infertile?

"A. It's generally accepted that a count of 40 million or lower renders a man relatively infertile.

"BY THE COURT:

"Q. Relatively infertile?

"A. Yes, sir.

"BY MR. LEAHEY:

"Q. What about 23,600,000?

"A. That's definitely abnormal and a reduced number of sperms.

"Q. And, what would you say regarding fertility or infertility with 23,600,000?

"A. I would say fertility was impaired".

"Q. Now, Doctor, could Carmen Sabella, in your opinion, have become a father on July 10, 1966?

"A. Yes, it's possible.

"Q. What would be the likelihood of his becoming a father?

"A. I believe it would be improbable, but, it's certainly possible.

"Q. It only takes one, right, Doctor?

"A. Not, . . . not, . . . yes, in a sense.

"Q. But your answer was it would be improbable

he could become a father?

"A. Yes, I think it's improbable; but not impossible".

"BY MR. PAWLOWSKI:

"Q. Doctor, I am going to ask you this question one more time; I am not satisfied. Is it reasonably, medically certain that Carmen Sabella could not have become a father in July, 1966?

"A. Would you rephrase that for me?

"Q. No, I couldn't, Doctor.

"BY THE COURT:

"Perhaps it can be read to you.

"(Court stenographer read as follows: 'Q. Is it reasonably, medically certain that Carmen Sabella could not have become a father in July, 1966?')

"A. I don't believe I ever made a statement that he could not have become a father that date. I only testified as regards the reduction in the sperm.

"BY MR. PAWLOWSKI:

"Then I'll ask him . . .

"BY THE COURT:

"You're being asked now, Doctor, by Mr. Pawlowski.

"BY MR. PAWLOWSKI:

"Q. Is it reasonably, medically certain that Carmen Sabella could not have become a father, July, 1966?

"A. No.

"BY THE COURT:

"Q. What was that?

"A. No.

"Q. It is not reasonably, medically certain, is that what you're saying?

"A. Yes.

"Q. In other words, you can't say with any reasonable, medical certainty the defendant could not have become a father in July, 1966?

"A. Yes, sir.

"BY MR. PAWLOWSKI:

"I would again ask the Court that the Doctor's testimony be stricken".

A summary of the testimony indicates the doctor has testified that defendant's fertility was impaired, and, in his opinion, it was improbable, but not impossible, that he could impregnate the prosecutrix at the time alleged. He could not, with reasonable medical certainty, testify that conception could not occur.

To establish causation by expert opinion, there must be testimony the result came from a specified cause, and a less direct expression falls below the required standard of proof and is inadmissible: Menarde v. Philadelphia Transportation Company, 376 Pa. 497; Powell v. Risser, 375 Pa. 60; Vorbnoff v. Mesta Machine Co., 286 Pa. 199.

As stated in Smail v. Flock, 407 Pa. 148 (152-3): "Moreover, expert testimony to have any evidentiary value must state with some positiveness that a given state of affairs is the result of a given cause. It is not enough to say that something could have happened. Anybody can guess. Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged".

The courts have ruled inadmissible, opinions which state that it is "extremely possible and likely" that a result was caused (Anderson v. Baxter, 285 Pa. 443), or that an ailment "might have resulted from the assigned cause, or that the one could have brought about the other": Fink v. Sheldon Axle & Spring Co., 270 Pa. 476 (479).

In order for opinion evidence to have probative value for submission to a jury, the expert must testify in his professional opinion the result did come from the alleged cause: Wargo v. Pittsburgh Railways Company, 376 Pa. 168; Vorbnoff v. Mesta Machine Co., supra. A probability or likelihood that a condition resulted from an injury is not equivalent to an opinion

that it did: McCrossen v. Philadelphia Rapid Transit Co., 283 Pa. 492; Dauphin Deposit Trust Company v. Lumbermens Mutual Casualty Company, 171 Pa. Superior Ct. 86; DiFazio v. J. G. Brill Company, 133 Pa. Superior Ct. 576.

The usual purpose of expert medical testimony is to establish causation. Here, it is the converse, i.e. offered to negate causation. This, however, does not change the standard of certainty necessary to its admissibility. Thus, an expert medical witness in this converse situation must testify with "reasonable certainty" (McCrossen, supra) that a result did not occur from a cause. Not that it was "improbable" or "unlikely", or "not probable", but, without equivocation, that in his professional opinion, based on medical knowledge and experience, considering the relevant facts in issue, there is a reasonable medical certainty it did not occur.

The issue here is whether defendant was the father of the child born to the prosecutrix. It is not necessary, in view of the Commonwealth's burden and defendant's presumption of innocence, to prove as a defense he could not have been the father. This would be impossible, short of precise proof of impotency coupled with sterility. However, here, the purpose of the expert testimony was to raise a reasonable doubt that defendant was capable of procreation. That he was incapable must not be based on surmise or conjecture arising from equivocal medical testimony which says it is improbable but not impossible. There are certain standards by which the medical profession can measure fertility and sterility. These standards establish certain abnormal conditions of the sperm, including count, or of the reproductive organs, which within reasonable medical certainty exclude the possibility of impregnation. To say it was possible for the pregnancy to result, but improbable, without establishing

the improbability as a reasonable medical certainty, raises conjecture in a case such as this. The jury should not be required to guess as to the nonexistence of fertility when there is no opinion based on reasonable medical certainty upon which to rely.

Expert testimony in a matter such as this is admissible for the purpose of affording the jury evidence of medical opinion from which it may determine the facts which resolve the issue of paternity or nonpaternity. In the posture of this case, where one of the defenses relied upon is the existence of a physical condition which negates the probability of fatherhood, it can only be considered in the light of medical knowledge through the testimony of an expert. In such case, the jury is entitled to at least an opinion from the expert that based on the existing knowledge of the medical profession it is reasonably certain he could not have been a father. This would not exclude the possibility, but at least it provides a standard upon which the jury could find a reasonable doubt. Anything short of this, such that it is improbable but not impossible under existing medical knowledge, would require guess and surmise. The jury must be guided by a standard, and when that standard is to be established by the opinion of an expert in the field, it should be within a reasonable medical certainty, even though paternity is not excluded.

We note Dr. Ayres had no hesitancy in concluding by the standard of reasonable medical certainty that the fertility of defendant was impaired. However, he would not, and apparently could not, by the same standard, state the impairment of fertility made procreation impossible. That it was improbable means only that it was "not probable; unlikely to be true or occur; not to be readily believed, not to be expected": Webster's New Collegiate Dictionary, Second Ed. However, that it was possible means, "within the

powers of performance, attainment, conception, etc. . . . Possible implies that a thing may exist or occur, given the proper condition . . .": Webster's New Collegiate Dictionary, Second Ed. Thus, in the application of semantics, that which is improbable but possible, in a scientific field which may by the establishment of standards set a norm beyond which with reasonable certainty something may or may not occur, the guide must be the established standard, which, although not absolute or exclusive, at least from an evidentiary standpoint, does not require a jury to conclude upon guess and conjecture.

We note also the opinion of the doctor was based in part upon the assumed fact (related to him by the defendant) that defendant had not diminished his sperm count by intercourse or masturbation before the test. In effect, since this was not a fact which the jury could find from the evidence, and it was an important consideration according to the doctor, it raises another question of the admissibility of the opinion. "Opinion evidence can have probative value, it at all, only where there is testimony sufficient to support findings by the jury of the facts assumed by the expert as the predicate of his opinion": Moyer v. Ford Motor Co., 205 Superior Ct. 384, 388. See also Rennekamp v. Blair, 375 Pa. 620.

We conclude the testimony of Dr. Ayres was properly stricken, and there was no prejudicial error in doing so. Notwithstanding the motion to strike, the entire testimony was before the jury and, although it was cautioned not to consider it, we wonder if such detailed description of a matter such as sterility of the male could by some remarkable process, upon instruction of the trial judge, be erased from the minds of the jurors. However, for the purpose of disposing of defendant's motion, we must conclude the testimony was not considered.

In our opinion, the evidence was clear and convincing and more than sufficient to prove beyond a reasonable doubt defendant was guilty. Therefore, his motion for new trial will be dismissed.

### ORDER

And now, May 10, 1968, after argument and upon consideration of briefs and the record, defendant's motion for new trial is dismissed.

Defendant is ordered and directed to present himself before this court at 1:30 p. m., May 20, 1968, for sentence.