Hagner, Appellant, *v.* Alan Wood Steel Company, Appellant.

Argued June 19, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Bernard J. McLafferty*, with him *Huganir, Butera and Detwiler*, for claimant.

*Lowell A. Reed, Jr.*, with him *Rawle & Henderson*, for employer.

OPINION BY WATKINS, J., September 15, 1967:

These are cross-appeals in a workmen's compensation case. The defendant-appellant, Alan Wood Steel Company, appeals from the judgment of the Court of Common Pleas of Montgomery County entered on a compensation award by the Workmen's Compensation Board in favor of Sarah M. Hagner, the claimant-appellee; and the claimant-appellant appeals from the amount of the judgment entered in her favor as affected by the court's computation of interest on the amount due.

The claimant, Sarah M. Hagner, is the widow of Harry L. Hagner, deceased, who was accidentally injured in the course of his employment as a steel worker on October 24, 1960. He was 67 years of age. His injuries consisted of a comminuted fracture of the first right metacarpal, a fracture of the right styloid process and tearing of the flexor muscle of the left thumb resulting from the jamming of his hand between two moving pieces of machinery. He was immediately hospitalized for surgery and left the hospital on October 29, 1960 but continued to be treated as an out-patient until December 19, 1960.

He never returned to work after the accident and his family doctor, John C. Maerz, found that he had a cardiac vascular problem on November 22, 1960. On December 20, 1960 he was admitted to the hospital and died on January 7, 1961. The cause of death was given as hypertensive arteriosclerotic heart disease. The decedent was paid compensation until December 11, 1960 under an open agreement.

The referee found that his death was substantially hastened and accelerated by the accident of October 24, 1960 and awarded benefits; on appeal, the board affirmed the referee's findings and conclusions of law as to causal relationship but remanded the case to the referee for further proceedings on matters not in-

volved in this appeal. The referee again found causation and awarded benefits; the board affirmed; and the Court of Common Pleas on appeal affirmed the board. This appeal followed.

The question involved is whether there is legally competent evidence to support the findings of the compensation authorities that there was a causal connection between the accident and his death. If there is such evidence it is binding on the reviewing court. *Leftwrich v. Colonial Alum. Sm. Corp.*, 184 Pa. Superior Ct. 622, 136 A. 2d 182 (1957), and as the order favored the claimant, she is entitled to have the evidence viewed in the light most favorable to her and must be given the benefit of all inferences reasonably deducible therefrom. *Butler v. U. S. Steel Corp.*, 205 Pa. Superior Ct. 508, 211 A. 2d 35 (1965).

Where there is no obvious causal relationship between the employee's injury and the alleged accident unequivocal medical testimony is necessary to establish the causal connection. *Lingle v. Lingle Coal Co.*, 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964). The question, therefore, is whether there is unequivocal medical testimony that the trauma and shock of the injury caused the heart condition resulting in his death or so aggravated it as to hasten his death. Dr. Maerz testified that he had discovered the decedent's heart problem in June of 1957. He testified: "A. Yes. I saw him at home with the complaint of dizziness and weakness, and I noticed he had high blood pressure, 220/110, and he had the signs, at that time, of a mild weakness on the left, which we call a stroke. And I put him in, and he completely cleared, almost without any medication, just on rest. So, in medicine, the only thing we can suppose is when he has that, it was, merely, a spasm, in which the arteries of his cerebrum, or brain, were in spasm because of the high pressure. He had no residuals from it, and he went home in two weeks, and returned to work."

He was hospitalized for two weeks and the medication had stabilized the heart problem so that he was able to return to work. Dr. Maerz testified that he was able to work steadily and otherwise lead a normal life until the accident. He saw him monthly since 1957. The doctor further testified as follows as to the effect of the accident on his heart condition.

"A. Well, the one thing that lay people should understand about any human being is that he has and I'm not trying to be any big deal—I'm just trying to put it down. We have, what we call homeostasis in our bodies. What we mean is the rest of the body attempts to take over any stress to any part of the body, and the heart is so wonderfully constructed the first stress, that is like weight lifting, if it has to push against something, the muscle gets big, just like your arms. Then, it reaches the epitome of what it can do and, then, it stretches out like an old balloon. That's called dilatation. The next thing God will do, in a stressed heart, is a rapid rate. If that isn't enough to give enough circulation, it'll fibrillate, which means all the chambers will beat as fast as possible. Then the last thing, it'll push up about four or five quarts of blood in your legs and lungs. Mr. Hagner definitely went through the hypertrophic stage. He had had incipient failure, which means once in awhile, with a little extra stress, he would pool a little fluid. But these were cured, quickly, by the new drugs he had been on for the past few years. So Mr. Hagner was between the dilatation and hypertrophy stage of his heart failure, with no signs of a rapid heart, or active signs of a fibrillation. As soon as the accident started— a couple of weeks later, the stress was; later it threw him into the two final stages of heart failure. Now, knowing he had a poor muscle to start with, it did not respond very well to a normal digitalization and yet, sometimes, the flabbiest heart will respond to digitalis,

so I felt that he had a heart in the final two stages that God gives you in an attempt to keep alive, and this accident brought him into this. I assure you he would have gone into these eventually, but I don't know how soon it would be."

The credibility of the medical witnesses and the weight of their testimony are matters finally and exclusively for the board and conflicts in the medical testimony may be resolved by it. *Lackman v. F. W. Woolworth Co.*, 205 Pa. Superior Ct. 129, 208 A. 2d 33 (1965).

Dr. Maerz, under direct examination, was asked: "... do you have a professional opinion as to whether there was any causal connection between the accident he had on October 24, 1960 and his death? A. I think it certainly accelerated his death and may be a factor in accelerating this disease he had, at least to have an earlier death." In his opinion, therefore, expressed as "I think", the accident aggravated his condition and hastened his death. This is unequivocal medical opinion evidence of causation.

The appellant makes much of several questions put to the doctor on cross-examination, such as: "Q. Doctor, what you're saying, in summary, in your opinion the most probably [sic] effect of this accident was to accelerate this man's condition? A. Yes. Q. And I suppose you would, in all medical and intellectual honesty, agree as you have alluded to a couple of times, it's equally suppose [sic] that you could have a spontaneous early failure just because of his medical condition? A. Absolutely."

What the doctor was doing was answering honestly the skillfully phrased questions put by the cross-examiner as being possible analyses but never did he change his unequivocal opinion expressed in his direct examination—"I think it certainly accelerated his death".

In *Parks v. Winkler*, 199 Pa. Superior Ct. 224, at page 227, 184 A. 2d 124 (1962), this Court quoted the answer of a doctor to a question as to his opinion as to causation and he answered, "I think it was a definite contributory factor" and the Court went on to say:

"Treating this case as one which requires medical testimony to establish the causal connection between the accident and the death, we agree with the defendant that a medical witness must testify that it is his professional opinion that the result in question did come from the assigned cause. A less direct expression of opinion does not constitute legally competent evidence: Washko v. Ruckno, Inc., 180 Pa. Superior Ct. 606, 609, 121 A. 2d 456.

"We find that Dr. Cook's testimony was sufficient, however, to meet the above mentioned test."

Judgment was entered in favor of the claimant on the board's award on November 10, 1966 for $13,204.58. The company appealed to this Court and contemporaneously filed a petition to open or strike in the court below. A rule to show cause was granted and this Court remanded the record to the court below. The rule to show cause was made absolute to strike the judgment of November 10, 1966 and the calculation of interest modified. Final judgment was entered on April 7, 1967 in the amount of $11,816.06. This appeal by the claimant followed.

Judgment had been entered on November 10, 1966, with interest computed at six per cent per annum from the date of filing the claim, May 25, 1961. The court below in striking the judgment and modifying the computation of interest, held that interest is to be calculated from the date each installment became due and not from the day the claim is presented. Section 410 of The Workmen's Compensation Law, 77 PS §751, provides: "Whenever any claim for compensation is presented to the board and is finally adjudicated in favor

of the claimant, the amounts of compensation actually due at the time the first payment is made after such adjudication shall bear interest at the rate of six per centum per annum from the day such claim is presented, and such interest shall be payable to the same persons as the compensation is payable." There is no merit to the claimant's appeal. *Petrulo v. O'Herron,* 122 Pa. Superior Ct. 163, 186 A. 397 (1936). This Court said in that case, at page 168: "Hence in this case, when the first payment of compensation, following the final adjudication in the claimant's favor, is made it should include all the installments of compensation due to that date, together with simple interest at six percent per annum from the respective dates the weekly installments were payable. Compensation began September 30, 1933. The first installment would be due and payable one week later, on October 7, 1933. Hence interest on the first installment is to be calculated from October 7, 1933; on the second from October 14, 1933; on the third from October 21, 1933; on the fourth from October 28, 1933, and so on, thus making 'allowance for interest on the compensation payments from the (respective times) they ought to have been paid.' McGee v. Youghiogheny & Ohio Coal Co., 121 Pa. Superior Ct. 85, 94, 182 A. 773." See also: *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400 (1936), and *Schach v. Hazle Book Coal Co.,* 155 Pa. Superior Ct. 242, 38 A. 423 (1944).

As the court below said: "Thus, it seems clear that both the statute, the cases interpreting the statute, and common sense, require that the interest is to be calculated from the date each installment became due, and not from the day the claim is presented."

Judgment affirmed.