**Berman v. Car Craft**

*David Durben,* for claimant.
*Herbert F. Holmes, Jr.,* for defendant.

BODLEY, J., February 9, 1971.—This workmen's compensation case comes before the court upon claimant's appeal from a decision of the Workmen's Compensation Board which set aside the order of the referee and ordered the termination of a compensation agreement.

Briefly stated, the undisputed evidence revealed that claimant suffered a retinal detachment on August 18, 1966, as the result of his having been struck on the head by a piece of metal while he was engaged in his work as a body and fender repairman at defendant's garage. The retina was reattached surgically on September 7, 1966.

On September 15, 1966, the parties entered into a compensation agreement for permanent and total disability under which payments were made by de-

fendant until September 27, 1967. Claimant remained unemployed until October 1, 1967, when he commenced work as a school custodian at the weekly rate of $82. His earnings at the time of his injury were $127.10 per week.

On November 8, 1967, defendant, Car Craft, petitioned the board to terminate the agreement, alleging that there was no medical or other reason why claimant could not return to his former occupation and that, hence, Berman's disability had ceased.

Hearings were had before the referee, who, on June 8, 1968, denied the prayer of the petition and awarded Berman compensation for an undetermined permanent partial disability. From this order, Car Craft appealed to the board, which reversed and terminated the agreement.

The nub of the problem before the court is found in the referee's finding of fact no. 3 which accepts the expert medical testimony offered on behalf of Berman by the operating surgeon to the effect that, although the reattachment of the retina was successful, the claimant should not henceforth perform any type of heavy work or risk the possibility of trauma associated with his old job; that to do so he would run the serious risk of a recurrence of the retinal detachment, in which event the damage would probably be irreparable with ensuing loss of vision in the injured eye. In addition, and as a part of finding no. 3, the referee found as a fact that claimant suffered a 15 percent loss of peripheral vision and some malfunction of the eye muscles which led to occasional double vision.

In making this finding, the referee rejected the contrary testimony of two opthalmologists offered by defendant. These gentlemen each expressed the opinion that while Berman's vision is slightly impaired, agreeing largely with claimant's expert in

this regard, such impairment does not preclude his returning to his prior occupation as an automobile body and fender repairman. Each agreed, however, that subsequent trauma to the head area could cause another detachment with more or less serious consequences but opined that any such fortuity would be a second accident, unrelated to the problem of whether or not claimant has now any continuing disability. Having made this finding (no. 3 above), the referee accepted claimant's medical evidence in its entirety and concluded as a matter of law that the injury had developed into an undetermined permanent partial disability, thus qualifying Berman for further compensation. He thereupon entered an appropriate award.

On appeal, the board explicitly accepted and affirmed the referee's finding no. 3, including the factual conclusion that Berman should not return to his former occupation nor engage in heavy work. However, the board added a finding of fact, no. 5, of its own wherein it stated that the remaining impairment of vision is not enough to cause disability affecting loss of earning power. It went on to conclude as a matter of law that:

"One: The claimant has failed to prove that any total or partial disability extends beyond September 26, 1967.

"Two: The defendant has proved that Agreement No. 298947 of Joseph Berman, Claimant should be terminated."

The employer's appeal was thus sustained and the referee's order of compensation was set aside.

The rationale behind the board's decision can best be revealed by this statement, found on page 3 of the board's opinion:

"We find no disagreement with [the Referee's] acceptance of the testimony of the operating surgeon.

We do not believe however that the Findings of Fact support a conclusion that the claimant is totally [sic] disabled. The medical evidence here restricts the activities of the claimant *only for the protection of his eye—it does not state that he is incapable of doing the work which he formerly did, it merely concludes that he might suffer the loss of an eye if he does such work.* The Workmen's Compensation Act provides compensation for the loss of an eye . . ." (Italics supplied.)

We cannot accept the board's procrustean effort to fit Berman's case, upon the facts it found, within the framework of its additional finding no. 5 and its legal conclusion.

We first note the board's error in placing upon claimant the burden of proving the continuation of the disability, whether partial or total. Such burden is upon the employer: Lewis v. Philadelphia Transportation Co., 213 Pa. Superior Ct. 42, 44 (1968). No prejudice to claimant is found, however, in view of the board's second conclusion to the effect that the employer had "proved" that the agreement should be terminated.

Our scope of review is narrow. We must determine whether the findings of the board are supported by competent evidence, and, of course, whether the board correctly applied the law: Downing v. Leechburg Mining Co., 195 Pa. Superior Ct. 574, 578-79 (1961). If supported by competent evidence, the board's findings of fact are binding on appeal, in which case the court reviews only questions of law: Primoli v. Phila. Bronze & Brass Corp., 211 Pa. Superior Ct. 224, 226 (1967).

We must view the evidence in the light most favorable to the party having the board's decision, defendant here: Moore v. MacArthur Pile Corp., 193 Pa.

Superior Ct. 512, 516 (1960). The board, and not the referee, is the final factfinder (Muenz v. Kelso Beach Improvement Association, 181 Pa. Superior Ct. 105, 110 (1956)); it may accept or reject, in whole or in part, the testimony of any witness (Moore v. Mac-Arthur Pile Corp., supra, at page 516); conflicts in medical testimony may be resolved by the board (Hagner v. Alan Wood Steel Co., 210 Pa. Superior Ct. 473, 478 (1967)), and the opinion of a medical expert as to the extent of a claimant's disability, if any, though it may be helpful, is not binding on the board and need not be accepted: Muenz, supra, at page 111

Exercising its prerogative, the board accepted the testimony and opinion of claimant's medical expert in its totality. That expert, Dr. Ainesly, after describing the injury, the repair and the remaining limitation of vision, said, without reservation, that Berman's disability was such that he should not return to his former occupation or indeed to any kind of heavy work; that to do so, even the lifting of weights in excess of 25 pounds, would expose him to great risk of recurrence of the detachment. He said a second such detachment could be inoperable. Dr. Ainesly also made it clear that except for this risk of further retinal detachment, no other visual impairment would prevent Berman's return to his former occupation.

In reaffirming the referee's finding no. 3, accepting Dr. Ainesly's opinion and rejecting that of defendant's experts, the board had this to say, at pages 2 and 3 of its opinion:

"Notwithstanding the testimony of the defendant's medical witnesses, we are persuaded, as was Referee Nelson, by the testimony of the operating surgeon and his assessment of the present condition of the repaired retina. Dr. Ainesly carefully explained that, although the reattachment was firm, the repair was

precarious in that the area of re-attachment was not wide or extensive. (N. T. 49). Dr. Ainesly was explicit in his opinion that Berman should not be exposed to the working conditions at the time of the accident, that any trauma to the head, bending over to lift or lifting anything over twenty-five pounds would seriously endanger the retinal attachment (N. T. 42, 51).

"We are inclined to affirm the Findings of Fact of the Referee. We find no disagreement with his acceptance of the testimony of the operating surgeon. . . ."

Having accepted this testimony, the board's finding no. 5, that Berman's condition did not leave him with any "disability affecting loss of earning power," was patently unsupported by competent evidence. The evidence offered by defendant's medical experts in support of that theory was inconsistent with Dr. Ainesly's opinion and was rejected. The board's finding no. 5, therefore, must fall and with it the board's conclusion no. 2, that defendant had proved that the agreement should be terminated. This is so, inasmuch as the conclusion is not supported by any valid findings of fact. See, e.g., Williams v. Bonair Foundry Company et al., 215 Pa. Superior Ct. 357, 362 (1969).

Having reached the conclusion that upon the record in this case the employer has not met its burden of proof in that it has failed to establish by competent evidence that Berman can return to his former, or similar, employment, we agree with the conclusion reached by the referee. The award made is fully justified. Under the workmen's compensation process, two basic conditions must be satisfied to support an award. There must first be a disability resulting from an injury occurring in the course of employment and, second, there must be a loss of earning power caused by the disability: Michael v. Roadway Express, Inc.,

211 Pa. Superior Ct. 238, 241 (1967). As stated in Michael, "These findings alone will support the award." These conditions have been met here.

Accordingly, we enter the following

ORDER

And now, February 9, 1971, the within appeal is sustained; the order of the Workmen's Compensation Board is reversed and the order of the referee dated June 7, 1968, and the award contained therein is reinstated and affirmed.