Mary Malocheski, Appellant, *v.* Consolidated Cigar Corporation and Workmen's Compensation Appeal Board, Appellees.

Argued December 7, 1973, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*Joseph J. Musto,* with him *Bedford, Waller, Griffity, Darling & Mitchell,* for appellant.

*James K. Martin,* for appellee.

OPINION BY JUDGE BLATT, March 6, 1974:

Mary Malocheski (claimant) sought benefits under The Pennsylvania Workmen's Compensation Act[1] for a disability allegedly arising from an injury to her left eye which occurred while she was employed by the Consolidated Cigar Corporation (Consolidated). Following a hearing, the referee found that the claimant had suffered a disability as a result of an accident occurring in the course of her employment, and he awarded her compensation for total disability through September 14, 1971. On appeal, the Workmen's Compensation Appeal Board (Board), without taking any additional evidence, determined that the testimony of

---

[1] Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1 et seq.

the claimant's medical witnesses was equivocal and vacillating, and it reversed the order of the referee, making a new finding of fact to the effect that the claimant "did not suffer an accidental injury in the course of her employment. . . ."

On appeals to this Court in workmen's compensation cases, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or any necessary finding of fact was unsupported by substantial evidence. *Jessop Steel Company v. Workmen's Compensation Appeal Board and Okey Miller,* 10 Pa. Commonwealth Ct. 186, 309 A. 2d 86 (1973). And where, as here, the Board has taken no additional evidence, we must rely on the facts as found by the referee, if they are supported by sufficient competent evidence. In such cases it is the province of the referee, not the Board, to consider the credibility of the witnesses before it. *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973).

The sequence of events herein, as testified to by the claimant and in large part uncontradicted, began in April of 1967 when the claimant, a wrapper layer, was allegedly using an air hose to clean the machine on which she worked. In the course of this activity some dirt blew up and some of it hit her in the eye, causing a sharp pain. She went to see the company nurse but, being unable to find her, then went home. The next day, because her eye still bothered her, she went to the nurse who put some drops in her eyes. When this did not help matters she went to the company doctor, and eventually to her own doctor, who referred her to an opthamologist. This opthamologist also treated her with eye drops, but she was not satisfied with the results and sought out another opthamologist. He treated her conservatively at first, but when her eye problems

did not seem to improve, he sent her to a specialist who eventually performed two corneal transplants on her left eye (the first transplant was rejected).

The burden herein was on the claimant to establish by competent evidence that she has suffered a disability and that such disability was accidental and not from natural causes or from the normal progress of any existing condition. *Lingle v. Lingle Coal Company,* 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964). "[A]n accident may not be inferred merely because an injury has been suffered, nor can an injury be inferred simply because an accident has happened to an employee. In order to sustain an award, the record must disclose competent and substantial evidence, either direct or circumstantial, of the happening to an employee of something undesigned, unexpected or fortuitous, outside of the ordinary course of events, and also of a fatal or disabling injury resulting therefrom." *Royko v. Logan Coal Company,* 146 Pa. Superior Ct. 449, 457, 22 A. 2d 434, 438 (1941).

The claimant attempted to establish the occurrence of the accident by her uncontradicted testimony pertaining to the dirt[2] hitting her in the eye. The essential question is whether or not this accident was the cause of an injury which led to her disability. To establish causation, the claimant presented the testimony of two medical witnesses. One was a Dr. Morrison, who first treated the claimant on May 26, 1967, and said that he then discovered a dendritic ulcer in the claimant's left eye. It was his opinion that the ulcer was caused by a virus and that the virus could not have entered the eye and taken hold without there having first been an injury. He testified that she could have had the

---

[2] The claimant was unsure of what actually struck her in the eye, with guesses ranging from dirt to tobacco to a small piece of metal.

ulcer for anywhere from ten days to three weeks prior to his examination and that it would have been preceded by an incubation period of seven to ten days following the injury. It was his opinion that the ulcer could not have occurred spontaneously, but he also indicated that he had not found any foreign body in the claimant's eye. The other medical witness was a Dr. Laibson, who stated that he had operated on the claimant, and that the corneal transplants were necessary because she had Fuch's Distrophy in her left eye. It was his opinion that the claimant had previously had an endothelial distrophy, which is a progressive disease, in both eyes and that this could have led to Fuch's Distrophy in the normal process of the disease. On the other hand, it could have been aggravated, and the possibility of Fuch's Distrophy could have been advanced, by an injury to the eye. He did not, however, discover any scar tissue or a foreign body in the eye.

Consolidated also presented two medical witnesses. One was a Dr. Marsden who had examined the claimant on May 6, 1967 and May 16, 1967, subsequent to the alleged accident but prior to the first examination by Dr. Morrison. He stated that he found only a slight conjunctiva of the left eye which he treated with drops and when he last saw her he found the eye to be normal. The other was a Dr. Nevyas, who examined the claimant on October 16, 1968, subsequent to her first corneal transplant. It was his opinion that she had endothelial distrophy prior to her alleged accident and that this had resulted in a natural progression to Fuch's Distrophy. Dr. Nevyas believed it very unlikely that the type of trauma which the claimant described could have caused Fuch's Distrophy, but said that if it had, a scar would have been left, which he had failed to find.

Where there is no obvious causal relationship between an employee's injury and an alleged accident, unequivocal medical testimony is necessary to establish the causal connection. *Hagner v. Alan Wood Steel Company,* 210 Pa. Superior Ct. 473, 233 A. 2d 923 (1967). And when, as here, there is a conflict in the testimony of the expert medical witnesses presented, it is the province of the fact finder (here the referee) to decide which conclusion will be adopted, as well as to determine the credibility of such witnesses and the weight to be attached to their testimony. *Frombach v. United States Steel Corp. and The Commonwealth of Pennsylvania,* 2 Pa. Commonwealth Ct. 556, 279 A. 2d 779 (1971); *Gasior v. Pittsburgh,* 188 Pa. Superior Ct. 371, 146 A. 2d 320 (1958). It is also true, however, that "[t]he burden of proving a causal relationship between the accident and the alleged disability is upon the claimant . . . and where medical testimony is necessary to establish causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion, the result in question did come from the assigned cause." *Miller v. Springfield Township Highway Department,* 202 Pa. Superior Ct. 616, 624, 198 A. 2d 399, 403 (1964). *See Mohler v. Cook,* 205 Pa. Superior Ct. 232, 209 A. 2d 7 (1965); *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 121 A. 2d 456 (1956).

It is clear that the sole medical testimony presented which would establish a causal connection between the claimant's condition (all the medical witnesses except Dr. Marsden agreed that the claimant's left eye was not normal) and the alleged accident was that of Dr. Morrison. Such testimony was apparently accepted by the referee as the basis for his findings of fact, but the Board rejected it as being equivocal and vacillating. We cannot agree with the Board. Dr. Morrison testi-

fied as follows concerning causation: "Q. Now, Doctor, based upon the history which was given by Mrs. Malocheski, and based upon your examination of Mrs. Malocheski, and based upon reasonable medical certainty, do you have an opinion as to what caused the ulcer? A. Yes, it was the virus. The cause of the ulcer is the virus, the dendritic virus. Q. You tell us we all have these viruses within us which are present. . . . A. With different immunity. Q. Would the virus itself have caused this particular ulcer? A. No, not itself, no. *You have to have an injury in order to have the virus take hold.* Q. Taking the history which she gave to you, in your opinion, what happened that day at work, would that have any relation to the ulcer? A. *Yes, she had a trauma, an injury to the cornea, and that would be the predisposing factor for the ulcer to develop.*" (Emphasis added.)

Rather than being equivocal, Dr. Morrison was definite on his opinion of the cause of the claimant's disability. He was unsure of the exact time in which the ulcer occurred because it would have been impossible to pinpoint the time. But his approximation that the ulcer had existed for ten days to three weeks following an incubation period of seven to ten days would be definite enough. There was sufficient competent evidence to support the referee's findings of fact.

The testimony indicates a situation where the claimant was involved in an accident and suffered an injury to her eye. This injury led to a more serious condition, eventually causing the claimant great pain and necessitating two corneal transplant operations. We, therefore, reverse the order of the Board and enter the following

## ORDER

Now, March 6, 1974, it is hereby ordered that judgment be entered in favor of Mary Malocheski and

against Consolidated Cigar Corporation for compensation for total disability at the rate of $52.50 per week from May 26, 1967 through to and including September 14, 1971, including legal interest on deferred payments, and all medical expenses as set forth in paragraph 2 of the referee's order, totalling $3,347.08, and payable to the claimant, her husband or Blue Cross and Blue Shield of Pennsylvania as specified in the referee's order.