Samuel L. Reed, Appellant, *v.* Glidden Company and Workmen's Compensation Appeal Board, Appellees.

Argued January 10, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Robert S. Glass* with him *Glass, Glass and Moot,* for appellant.

*Robert G. Rose,* with him *Spence, Custer, Saylor, Wolfe & Rose,* for appellee, Glidden Company.

OPINION BY JUDGE BLATT, April 22, 1974:

Samuel L. Reed (claimant) allegedly suffered an injury to his right hand during June of 1968, while in the employ of the Glidden Company (Glidden). He sought compensation pursuant to the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1 et seq., and, following hearings, a referee awarded him compensation for the period from August 8, 1968 to May 12, 1969. On appeal, the Workmen's Compensation Appeal Board (Board), without taking additional testimony, reversed the findings of the referee on the basis that the claimant had failed to prove the occurrence of an injury as

a result of a compensable accident. The claimant appealed to the Court of Common Pleas of Cambria County, which properly transferred the case to this Court.

On appeals to this Court in workmen's compensation cases, where the referee has found in favor of the party carrying the burden of proof and the Board has taken no additional evidence, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed or any necessary findings of fact, as found by the referee, were unsupported by substantial evidence. *Leipziger v. Workmen's Compensation Appeal Board and Guida*, 12 Pa. Commonwealth Ct. 417, 315 A. 2d 883 (1974). It is here the province of the referee, not the Board, to consider the credibility of the witnesses before it. *Malocheski v. Workmen's Compensation Appeal Board and Consolidated Cigar Corporation*, 12 Pa. Commonwealth Ct. 430, 316 A. 2d 81 (1974).

The claimant presented evidence at the hearings to the effect that in June of 1968 (he was unsure of the exact date) he and some fellow employees were attempting to slide a steel roll by using a sledge hammer and steel wedges. He said that one of the wedges slipped, shot out of the roll and struck him on the right wrist. He presented two witnesses, who were present at the time the incident occurred, and who corroborated his story. Although he did not report the incident immediately, as company policy required, one of the witnesses testified that he (the witness) reported the incident to the foreman the following day, and the claimant said he (the claimant) informed the company doctor of the incident during a physical examination he received in late June or early July of 1968.

The claimant did not miss any work immediately after the incident, but he did experience pain in his wrist and he consulted various physicians, including Dr. John Silensky, by whom he was examined on Au-

gust 16, 1968. Dr. Silensky was an orthopedic specialist, who testified that the claimant had a fracture of the scaphoid in his right wrist as well as aseptic necrosis; the fracture being apparently one which the claimant had suffered in 1966. Dr. Silensky testified, however, that the earlier injury had been aggravated when the wrist was struck by the wedge, thus necessitating an operation. Dr. Silensky testified as follows: "Q. So it would have been possible then for this man to have worked from January 13, 1966 until June or July of 1968 with that fragment in the wrist? A. That is correct. He could. Q. In the meantime, that fragment would have been dead, because necrodic and aseptic set in? A. Right. Q. Would it be possible for him to have worked doing such work as using a sledge hammer if he had had a fracture? A. Yes. Q. He could have done that? A. Yes, he could have been able to work. Q. Did you hear the description to the size and weight of the wedge that struck this wrist in June of 1968? A. Yes. Q. Based upon your observation and based upon the fact that you did a fusion, do you have an opinion as to whether or not the wedge striking this wrist would have caused and did cause an aggravation to the extent that a fusion was necessary? A. That is correct. *It's my opinion that it was aggravating and it was necessary to fuse it.* Q. The aggravation was caused by the wedge hitting the wrist? A. Yes. BY ATTORNEY ROSE [attorney for Glidden]: Q. *Are you saying, Doctor Silensky, that if he had been hit by the wedge that he would have been required to have a fusion? A. That's correct.*" (Emphasis added.) After Dr. Silensky eventually performed a fusion of the distal ends of the radius, the scaphoid and senalunar bones of the claimant's right wrist, the claimant returned to work on May 3, 1969, at his regular job and at his regular pay.

Upon reviewing the record we believe that there was substantial competent evidence to support the referee's

findings of fact. There was uncontradicted testimony by three witnesses (including the claimant) that the claimant had been struck on the wrist by a wedge while in the course of his employment. While it is true that the claimant did not immediately notify his employer of the accident, he did testify that he informed the company doctor of the incident well within the time limitation of Section 311 of the Workmen's Compensation Act, 77 P.S. §631, and this would have constituted sufficient notice to Glidden. *Flock v. Pittsburgh Terminal Coal Corporation*, 140 Pa. Superior Ct. 232, 13 A. 2d 881 (1940). In addition, the claimant's co-worker testified that he (the co-worker) informed the foreman of the accident, and this might itself have constituted sufficient notice to Glidden. *See Canterna v. Workmen's Compensation Appeal Board and U. S. Steel Corporation*, 12 Pa. Commonwealth Ct. 579, 317 A. 2d 355 (1974) ; *Uditsky v. Krakovitz*, 133 Pa. Superior Ct. 186, 2 A. 2d 525 (1938).

The essential issue here is one of causation. Dr. Silensky testified that the fusion operation was necessary because, when the claimant's wrist was struck by the wedge, a pre-existing injury was aggravated. A claimant, of course, is entitled to compensation where an accident suffered in the course of his employment aggravates a pre-existing condition so as to cause his subsequent disability. *Mapp v. Philadelphia*, 215 Pa. Superior Ct. 101, 257 A. 2d 306 (1969) ; *Benci v. Vesta Coal Company*, 131 Pa. Superior Ct. 435, 200 A. 308 (1938). While Glidden introduced medical testimony disputing that presented on behalf of the claimant and being to the effect that the disability occurred because of the normal progress of the pre-existing condition of the wrist, it was for the referee here to determine which medical evidence to accept as credible. *Hoy v. Fran Lingerie and Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 542, 308 A. 2d 640 (1973).

Glidden does challenge Dr. Silensky's testimony as equivocal, contending that his findings were based on the assumption that the history given to him was correct and that the claimant had in fact been struck on the wrist by a wedge and had developed pain thereafter. The equivocation noted in cases such as *Smith v. Pullman-Standard Car Manufacturing Company*, 194 Pa. Superior Ct. 263, 166 A. 2d 299 (1960), however, was not present here, for Dr. Silensky was not equivocal as to causal connection. It was not for him to determine the circumstances under which the claimant had or had not suffered an accident. His obligation was merely to establish, by unequivocal testimony, the causal connection between that accident and any resultant disability, as well as the extent, if any, of such disability. We believe Dr. Silensky's testimony clearly met that requirement.

For the above reasons, therefore, we issue the following

### ORDER

Now, April 22, 1974, we hereby enter judgment against the Glidden Company and in favor of Samuel L. Reed for compensation at the rate of $50.00 per week for the period from August 8, 1968 to and including May 12, 1969, including legal interest on deferred payments, and medical payments to Dr. John Silensky in the amount of $105.00. The Glidden Company shall receive credit for 16 weeks of compensation which has been paid to the claimant pursuant to its Social Insurance Program.