Harrisburg Housing Authority, Appellant, *v.* Workmen's Compensation Appeal Board and McKinley Hubbard, Appellees.

Argued June 6, 1974, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Ronald M. Katzman,* with him *Goldberg, Evans & Katzman,* for appellant.

*Lawrence G. Frank,* with him *Smith B. Gephart* and *Killian & Gephart,* for appellees.

OPINION BY JUDGE WILKINSON, July 24, 1974:

This is an appeal by the employer from an award of workmen's compensation for total disability. Claimant-appellee was injured as a result of a compensable accident when he fell from a ladder striking his back. The referee found that claimant-appellee "was totally disabled by his accidental injury of January 25, 1971, up to and including the present time." The Workmen's

Compensation Appeal Board affirmed the referee's determination and this appeal followed.

Our scope of review in this case is limited. As stated by Judge BLATT in *Leipziger v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 417, 419, 315 A. 2d 883, 885 (1974) : "On appeals to this Court in workmen's compensation cases, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or any necessary finding of fact was unsupported by substantial evidence. (Citation omitted.) And where, as here, the Board has taken no additional evidence, we must rely on the facts as found by the referee if they are supported by sufficient competent evidence." (Citation omitted.) We are also mindful that "it is our duty to examine the record and determine, not whether we would have made the same findings as the authorities, but whether the evidence is such that a reasonable person, acting reasonably, might reach the same conclusion on the facts as did those authorities." *Hershey Estates v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 470, 472, 308 A. 2d 637, 638 (1973).

In its brief, appellant concedes that the "accident resulted in total disability for a maximum of six months, but contends that there is no competent medical evidence to support a finding that said disability existed for any more than six months as a maximum."[1] The issue, therefore, is whether the referee's finding that the total disability is continuing "up to and including the present time" was supported by substantial evidence.

A careful review of the entire record reveals that there was substantial evidence to support a finding that

---

[1] Interestingly, appellant, in its appeal from the referee's decision, conceded a disability of only three months' duration.

claimant-appellee's disability was of a continuing nature. On August 19, 1971, seven months after the accident, Dr. Goodman, later a witness for the appellant, wrote: "I would consider this man as being totally disabled." The testimony of Dr. Sussman, claimant-appellee's witness, two years after the accident, is crucial: "A. I would concur with the idea that we have, one, a disabled individual who is no longer able to be gainfully employed, at least in the capacity that he had prior to the accident. Number two, we have at present an individual who has the residual of what has been *initiated at the time of the accident,* plus concurrent medical problems—Q. Which were not related? A. The summation of which adds to his *total disability.*" Dr. Sussman did not later alter his testimony as appellant claims. When asked if the immediate effect of the sustained trauma would have abated after three months, he responded: "I am inclined to agree with that *if* the individual did not possess a vulnerable bit of pathology known as osteoarthritic changes of his back. The fact that he had this disease arthritic disease to start with, although it was quiescent at the time of his injury, made him more vulnerable to have his symptomatology, whatever they may be, last for a longer period." Under persistent and skillful cross-examination, Dr. Sussman was asked essentially the same question and responded in the same manner.[2] Taken as a whole, Dr. Sussman's testimony supports a finding that the disability was of a continuing nature.

Appellant also raises an argument involving the legal sufficiency of the testimony of Dr. Sussman, claim-

---

[2] "Q. . . . —so you wouldn't necessarily disagree with that statement of Dr. Goodman? A. Right, the immediate effect of the trauma certainly would subside within a three month period, *but* again considering his underlying disease, which was quiescent prior to the episode, plus secondary phenomena, have to be considered as potentiating his symptoms."

ant-appellee's medical witness. The proper test concerning the testimony of medical experts was clearly set forth in *Menarde v. Philadelphia Transportation Company*, 376 Pa. 497, 501, 103 A. 2d 681, 684 (1954): "[T]he expert has to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence." (Citations omitted.) Equivocal expressions of medical opinions such as "could have," *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A. 2d 445 (1957), *Nestor v. George*, 354 Pa. 19, 46 A. 2d 469 (1946), "highly possible," *DiFazio v. J. G. Brill Company*, 133 Pa. Superior Ct. 576, 3 A. 2d 216 (1938), "probably was," *Bonaduce v. Transcontinental Gas Pipe Line Corporation*, 190 Pa. Superior Ct. 319, 154 A. 2d 298 (1959), and "probably a cause and effect relationship," *McMahon v. Young*, 442 Pa. 484, 276 A. 2d 534 (1971), have been held to be legally insufficient. However, in *Hagner v. Alan Wood Steel Company*, 210 Pa. Superior Ct. 473, 233 A. 2d 923 (1967), the doctor's statement that "I think it certainly accelerated his death" was held to be a legally sufficient expression of professional opinion.

Turning to Dr. Sussman's testimony: "Q. Doctor, do you have an opinion based upon the history given you by Mr. Hubbard and your examinations of Mr. Hubbard and your treatment of Mr. Hubbard as to whether or not his disability today, inability to work, is related to the accident of January 25, 1971? A. There is a relationship, and although he did have osteoarthritis prior to the accident, it was by history in an asymptomatic state. The trauma experienced during his fall precipitated a series of manifestations as exemplified by pain,

limitation of motion and disability. Consequently, *it is my interpretation* that his post-accident disability is related to the trauma received during the accident, and that the osteoarthritis and the bridging that existed prior to that has no direct bearing but made him more vulnerable." The operative phrase is "it is my interpretation." Appellant argues that this does not satisfy the test of *Menarde, supra*. We disagree. The phrase, "it is my interpretation," does not qualify or modify the testimony so as to render it equivocal, and it appears to be synonymous with the phrase, "I think," which was held to be legally sufficient in *Hagner, supra*.

Appellant's final argument is that the compensation authorities erroneously included hospital expenses for May and June, 1971 in the award to claimant-appellee. During those months, claimant-appellee was hospitalized for treatment of thrombosis which, in Dr. Sussman's words, had "no connection at all with the accident." We can find no evidence in the record which would support a finding that the hospital expenses for those months were incurred as a result of the accident.

Accordingly, we enter the following

ORDER

Now, July 24, 1974, it is hereby ordered that judgment be entered on behalf of McKinley Hubbard and against the Harrisburg Housing Authority and/or its insurance carrier whereby they are directed to pay to McKinley Hubbard compensation for total disability at the rate of $60.00 per week, beginning January 25, 1971, and continuing within the meaning and limitations of the Pennsylvania Workmen's Compensation Act, together with interest at the rate of six percent per annum on all deferred amounts of workmen's compensation payable hereunder, with credit to the appellant and/or its insurance carrier for any workmen's compensation

already paid.  Appellant and/or its insurance carrier are also directed to pay the following bills:

| | |
|---|---|
| Harrisburg Hospital | $842.40 |
| Harrisburg X-Ray Associates | 18.00 |
| A. Z. Ritzman Associates | 30.00 |
| Emerald Drug Store | 23.25 |
| Dr. Nathan Sussman | 492.00 |
| Dr. Bittenbender and Dr. Patterson | 30.00 |
| Cardiovascular and Thoracic Associates | 30.00 |
| McKinley Hubbard | 43.00 |