Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Henrietta L. Beaver, Appellees, *v.* Mifflin-Juniata State Health Foundation and State Workmen's Insurance Fund, Insurance Carrier, Appellants.

Argued March 7, 1975, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Arthur J. Rinalda,* with him *Jay V. Yost,* Special Assistant Attorney General, and *John E. O'Connor,* Assistant Attorney General, for appellant.

*Helen Arseniu White,* with her *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, May 19, 1975:

This is an appeal by Mifflin-Juniata State Health Foundation and the State Workmen's Insurance Fund (hereinafter collectively referred to as the Foundation) from an order of the Workmen's Compensation Appeal Board (Board), dated October 17, 1974, which reversed a decision by a referee, and dismissed the Foundation's petition to terminate its compensation agreement with Henrietta L. Beaver (Beaver).

Beaver was employed by the Foundation as a "Home Health Aide" when she injured her back in a work-related accident on January 12, 1972. On February 1, 1972, Beaver and the Foundation executed compensation agreement No. 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, which provided that Beaver would be paid compensation for temporary total disability at the rate of $47.66 per week. This agreement was approved and compensation was paid thereunder until August 17, 1972. On November 13, 1973, the Foundation filed a petition to terminate which alleged that "Claimant

[Beaver] was able to return to work on 8-17-72 without any further disability or loss in earning power due to her accidental injury sustained on 1-12-72." A hearing was held before a referee on March 19, 1974 and testimony was taken from Beaver and Dr. John F. Whitehill, Jr., an orthopedic surgeon, who testified for the Foundation. In his decision, dated March 27, 1974, the referee found that:

> "All disability resulting from the accidental injury of January 12, 1972 ceased and terminated as of August 17, 1972, the date to which compensation has been paid."

The referee, therefore, granted the Foundation's petition to terminate. Beaver appealed to the Board which, in a decision dated October 17, 1974, reversed the referee and dismissed the Foundation's petition to terminate. The Board stated that the Foundation had failed to meet its burden of proof and, therefore, the Board deleted the referee's above-quoted finding of fact and added the following finding of fact:

> "Claimant still suffers pain in her back from the accident, and the defendant has presented no competent evidence that all disability has ceased."

In its appeal to this Court the Foundation argues that the Board erred by substituting its finding for that of the referee and by dismissing the petition to terminate.

In a workmen's compensation case, where the party with the burden of proof[1] has prevailed before the referee, and the Board has taken no additional evidence, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was

---

1. This case involved a petition to terminate and, therefore, the Foundation had the burden of proving that Beaver was no longer disabled or that any disability which she had was no longer the result of her compensable accident. *See Tioga Textiles Associates, Inc. v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. 492, 319 A.2d 211 (1974).

committed, or any necessary findings of fact, as found by the referee, were unsupported by substantial evidence. Judgments concerning the credibility of the witnesses are for the referee, rather than the Board or this Court. *See Reed v. Glidden Company,* 13 Pa. Commonwealth Ct. 343, 318 A.2d 376 (1974).

The sole issue involved in this case is whether or not there is substantial evidence in this record to support the referee's above-quoted finding of fact. Thus, we need only determine if Dr. Whitehill's testimony is sufficient[2] to support the finding that all disability "ceased and terminated as of August 17, 1972."

Our review of the record immediately leads us to the conclusion that Dr. Whitehill's testimony is not sufficient to support the referee's finding that all disability ceased and terminated *as of August 17, 1972.* Dr. Whitehill testified that he had examined Beaver on just one occasion, March 27, 1973, and that, subsequent to that date, he reviewed the results of a myelogram which he had recommended for Beaver. Dr. Whitehill did not express any opinion concerning the state of Beaver's health prior to March 17, 1973 and, therefore, even if Dr. Whitehill's testimony is sufficient to support the finding that "all disability had ceased," we will still have to modify the referee's finding to read "as of March 27, 1973" rather than "as of August 17, 1972."

---

2. It has been brought to our attention that we tend to use the terms "substantial evidence" and "sufficient evidence" interchangeably. We recognize that to some this practice may be confusing, but we do not believe it is incorrect. Our scope of review in these cases demands "substantial evidence" in the record to support findings of fact. We have defined substantial evidence in terms of the reasonable man test. *See A. P. Weaver, infra.* Sufficiency merely connotes that amount which is enough (i.e., substantial) under our scope of review to support a finding and, therefore, sufficiency is only meaningful after we have set forth our scope of review and defined what amount or type of evidence is needed to support a finding.

We believe that it is important to note that the issue involved in this case is whether Dr. Whitehill's testimony is sufficient to support the finding that "all disability ceased and terminated," rather than whether his testimony is competent to support the finding. The Board was in error when it found that the Foundation had presented "no competent evidence that all disability had ceased." Dr. Whitehill's testimony was obviously competent and the only issue involved here is whether that testimony is sufficient to support the finding that all disability ceased. Thus we must decide whether or not a reasonable man, acting reasonably, could have concluded from Dr. Whitehill's testimony that all disability had ceased and terminated. *See A. P. Weaver and Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971). Our review of this record leads us to conclude that the referee's finding that "all disability ceased and terminated" is supported by substantial evidence. Dr. Whitehill testified that after he examined Beaver and reviewed the results of her myelogram he concluded that she had no physical or organic disability which would prevent her from returning to work. He stated that he could see no reason for Beaver's continued pain and discomfort and that he thought she had some "emotional overlay."[3] When asked if he had an opinion as to whether or not Beaver could return to work he stated that he did not have an opinion. On cross-examination, Dr. Whitehill again stated that in his opinion, there was no physical or organic reason which would prevent Beaver from returning to work. This is a rather close case but we believe that a reasonable man, acting reasonably, could conclude from Dr. Whitehill's testimony that all of Beaver's dis-

---

3. *Dorland's Illustrated Medical Dictionary,* 24'th ed. (1965), defines "emotional overlay" as follows:

"[T]he emotionally determined increment to an existing symptom or disability which has been of an organic or of a physically traumatic origin."

ability had "ceased and terminated." That being so, the referee's finding that "all disability ceased and terminated" is supported by substantial evidence and, therefore, neither the Board nor this Court have any power to disturb the finding. *See Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). The Board erred in this case when it deleted the referee's finding and substituted its own judgment concerning the credibility and weight of the evidence for that of the referee.

There is one additional matter we believe necessary to consider. The record in this case indicates that the State Workmen's Insurance Fund (SWIF) suspended payments to Beaver under the compensation agreement on August 17, 1972, but that it was not until November 13, 1973 that a petition to terminate was filed. Thus the suspension of compensation may very well have been in violation of section 413(b) of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §774.1 (Supp. 1974-1975),[4] and if it was a violation, then SWIF is subject to penalty as provided for in section 435 of the Act, 77 P.S. §991 (Supp. 1974-1975). We recently held in *Crangi Distributing Company v. Workmen's Compensation Appeal Board,*

---

4. Section 413(b) of the Act reads as follows:

"Any insurer who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement thereof as provided in section 408 [77 P.S. §732], or a final receipt as provided in section 434 [77 P.S. §1001], or without filing a petition and either alleging that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect which is based upon an examination made within fifteen days of the filing of the petition or having requested and been granted a supersedeas as provided in this section, shall be subject to penalty as provided in section 435 [77 P.S. §991]." (Footnotes omitted.)

17 Pa. Commonwealth Ct. 530, 333 A.2d 207 (1975), that an apparent offender of the provisions of the Act may not be penalized pursuant to subsection (d) of section 435 without notice and an opportunity to be heard on the issue. Therefore, in our order we will direct the Board to provide notice to SWIF and to schedule a hearing pursuant to subsection (b) of section 435, for the purpose of determining whether or not SWIF has complied with the Act.

In summary, we conclude that the referee's finding of fact that Beaver's disability ceased and terminated is supported by substantial evidence and that, therefore, the Board erred when it deleted that finding and reversed the referee's decision. For the reasons noted above, however, the referee's finding that "all disability ceased" must be modified to read "as of March 27, 1973" rather than "as of August 17, 1972." Therefore, the Foundation is entitled to the termination of its compensation agreement with Beaver as of March 27, 1973. We also conclude that SWIF may have failed to comply with the provisions of the Act when it suspended compensation payments on August 17, 1972. In accordance with the above we therefore

ORDER

AND NOW, this 19th day of May, 1975, the petition to terminate compensation agreement #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, filed by the Mifflin-Juniata State Health Foundation and the State Workmen's Insurance Fund is granted in part, and it is ordered that payments under said agreement are terminated as of March 27, 1973. Any deferred payments of compensation shall bear interest. Furthermore, the Board is directed to provide notice to the State Workmen's Insurance Fund, and to schedule a hearing, pursuant to subsection (b) of section 435 of the Act, 77 P.S. §991(b) (Supp. 1974-1975), in order to determine if the State Workmen's Insurance Fund failed to comply with the provisions of the Act when it suspended compensation payments in the above-noted matter.