531 A.2d 883

James Skurkey, Petitioner *v.* Workmen's Compensation Appeal Board (Foster-Wheeler Corp.), Respondents.

Submitted on briefs April 20, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Bart E. Ecker, Laputka, Bayless, Ecker & Cohn, P.C.,* for petitioner.

*Hugh F. Mundy,* with him, *Marianne C. Smith, Dougherty, Mundy & Leventhal,* for respondent, Foster-Wheeler Corp.

OPINION BY JUDGE BLATT, October 5, 1987:

James Skurkey (petitioner) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting benefits for the periods from April 9 to May 9, 1980 and from October 10 to November 26, 1980.

The petitioner has had a long history of both work and non-work-related injuries. He is, however, now challenging only the referee's and the Board's conclusion

concerning the time from October 10, 1980 to November 26, 1980. Accordingly, we will limit our recitation of the facts to those relevant to that benefit period.

The petitioner, while working for the Foster-Wheeler Corporation (employer) suffered a work-related ankle injury, from which he was temporarily totally disabled as of October 10, 1980. One of his treating physicians, Dr. Gunderson, thereafter released him to return to work on November 26, 1980. The petitioner, however, contends that, when he attempted to return to work, the employer's physician, Dr. Smith, would not let him work because of the possibility of continuing ankle problems. He did not, in fact, return to work until April 5, 1983. The referee, however, concluded that all disability had ceased as of November 26, 1980, and granted benefits for the period from October 10, 1980 to November 26, 1980. The Board affirmed and this appeal followed.

In this unique workmen's compensation case, the petitioner is not challenging the referee's finding that all disability had ceased as of November 26, 1980. Rather, he contends that, where the employer's physician refused to allow him to return to work because of a continuing disability, the Board erred in denying benefits on the basis that he should have returned on the date his treating physician said he was able to do so.[1]

Preliminarily, we note that a company physician is, under certain circumstances, an agent of the employer, so that the employer is bound by the actions of its physician. *Reed v. Glidden Company,* 13 Pa. Commonwealth

---

[1] Our scope of review of a Board order, of course, is limited to determining whether or not constitutional rights were violated, an error of law was committed, or a necessary finding is unsupported by substantial evidence. *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.),* 104 Pa. Commonwealth Ct. 175, 521 A.2d 503 (1987).

Ct. 343, 318 A.2d 376 (1974) (notice of injury to company physician constitutes notice to employer). And, where, as here, a company physician has the authority to prevent an employee from working due to an injury, we believe that the physician is necessarily acting as the employer's agent. *See Nemonich v. Pittsburgh Coal Company*, 161 Pa. Superior Ct. 239, 54 A.2d 73 (1947) (examination by two company doctors who failed to discover abnormality of claimant was held to be notice to the employer of such abnormality). We believe, therefore, that, if Dr. Smith, as an agent of the employer, did in fact prohibit the petitioner from returning to work on January 6, 1981, the employer is estopped from arguing now that the petitioner should have returned to work on November 26, 1980.[2] *See Novelty Knitting; see also Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), and *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983). Estoppel would apply here if the employer's doctor intentionally or negligently misrepresented a material fact, *i.e.* that the petitioner could not return to work, knowing or having cause to know that the petitioner would rely on the misrepresentation, and that the petitioner did justifiably rely to his detriment. *See Brog Pharmacy v. Department of Public Welfare*, 87 Pa. Commonwealth Ct. 181, 487 A.2d 49 (1985).

The referee, as here affirmed by the Board, found that the petitioner was disabled as a result of a work-related injury from October 10, 1980 to November 26, 1980, and concluded that the petitioner was able to return to work as of November 26, 1980. And, although

---

[2] Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by words and actions to expect. *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983).

the findings of the referee are supported by substantial record evidence, we believe that, given the unique circumstances of this case (*i.e.*, where the petitioner testified that he attempted to return to work but that the employer's physician prohibited him from so doing because of the possibility of a continuing disability), it was necessary for the referee to determine whether or not the petitioner was, in fact, prohibited from returning to work in January of 1981, and, if so, whether or not the employer was thereby estopped from arguing that the petitioner should have returned on November 26, 1980. Accordingly, if the referee found that the employer *was* estopped, the referee would have to determine the period for which the employer could not argue that the petitioner was able to work, *i.e.*, the period of time until which the petitioner knew, or with reasonable diligence could have known of the deception. *Dudley v. Workmen's Compensation Appeal Board (Township of Marple)*, 80 Pa. Commonwealth Ct. 233, 471 A.2d 169 (1984), *aff'd per curiam*, 510 Pa. 283, 507 A.2d 388 (1986).

With regard to the above-mentioned questions, we note that the referee, in his finding of fact No. 8, pertinently found that:

> The [petitioner] recently returned to work on April 5, 1983, but testified that he attempted to return in June of 1981. However, according to the [petitioner], the defendant would not let him return to work because of continuing problems with his ankle. He also testified that he was capable of returning to work·with the defendant if they [sic] would give him his old job back.[3]

---

[3] Although the referee stated that the petitioner attempted to return to work in June of 1981, rather than January of 1981, we find this error to be de minimis.

This so-called "finding", however, is not a finding at all; rather, it is a mere recitation of the petitioner's testimony. Accordingly, in spite of the petitioner's testimony and the employer's physician's testimony, to the effect that the petitioner was not permitted to return to work,[4] the referee actually made no finding on this necessary question. On appeal, however, the Board pertinently found that "[t]he [petitioner] attempted to return to work in January of 1981, but was not allowed to

---

[4] Dr. Smith, the employer's physician-agent pertinently testified on direct examination that:

Q. Doctor, the ·Claimant James Skurkey testified that in November of 1980 he appeared at your office at the plant in Mountaintop for the purpose of returning to work, at which time you advised him he would not be permitted to return to work because of his ankle. I ask whether or not you have your records with you and whether or not you recall having seen the Claimant James Skurkey at or about that time?

A. Well, the thing they have is January 6, 1980 [sic].

Q. January 6 of 1980 [sic].

A. January 6, 1980 [sic].

Q. And did you see him after that date at all?

A. That's the last note I have here.

Q. And when you saw him on January 6 of 1980 [sic], what history did you have in your records?

A. That I 'I can't okay him for work until I check with two different groups of orthopedic surgeons who were treating him.'

Dr. Smith pertinently testified on cross-examination that:

Q. Doctor, on January ˙6 of 1981 at the time that you met with Mr. Skurkey, did you have an opinion at that time that the man was or was not disabled?

A. Only from the record. I certainly had—I was of the opinion that the possibility of disability existed and I determined that since the possibility of disability existed, I would find out from the proper people whether or not it did exist before allowing him to return to work.

return to work by Dr. Henry Smith, the plant physician . . . [t]he Referee found Dr. Gunderson to be more credible. . . ."[5]

Where, as here, the Board took no additional evidence, the referee was the ultimate fact-finder, and the Board could make *no* additional findings. *Rettinger v. Workmen's Compensation Appeal Board (American Can Co.)*, 103 Pa. Commonwealth Ct. 595, 520 A.2d 1252 (1987).

We believe, therefore, that the Board erred in finding that the petitioner was prohibited from working by the employer's physician without taking new evidence. And, inasmuch as the referee made no findings on necessary issues, we will remand this matter to the Board for proceedings consistent with this opinion.

## ORDER

AND NOW, this 5th day of October, 1987, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is vacated, and this matter is remanded for findings as to whether or not the employer's physician prohibited the petitioner from returning to work in January 1981, and whether or not the employer is estopped from arguing that the petitioner should have returned to work on November 26, 1980.

Jurisdiction relinquished.

Judge PALLADINO dissents.

---

[5] The petitioner does not challenge the referee's conclusion that Dr. Gunderson was more credible that Dr. Smith on the issue of disability. Dr. Gunderson, however, neither did testify nor could testify to the necessary issues concerning whether or not Dr. Smith, as the employer's agent, prohibited the petitioner from returning to work on January 6, 1981.